**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARISSA L. SIMPSON,** | : | **CIVIL NO.: 1:20-CV-00275** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Schwab)** |
| **v.** | : | |
| | : | |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of** | : | |
| **Social Security,**[1] | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.  Introduction.

This is a social security action brought under 42 U.S.C. §§ 405(g) and

1383(c)(3).  The plaintiff, Darissa L. Simpson ("Simpson"), seeks judicial review

of the final decision of the Commissioner of Social Security ("Commissioner")

denying her claims for disability insurance benefits and supplemental security

income under Titles II and XVI of the Social Security Act.  For the reasons set

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

forth below, the Commissioner's decision will be vacated, and the case will be remanded to the Commissioner for further consideration.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs.10-1* to *16*.[2]  On April 19, 2018, Simpson applied for disability insurance benefits and supplemental security income, alleging that she had been disabled since April 19, 2018. *Admin. Tr.* at 16.  The Social Security Administration denied Simpson's claim initially on July 18, 2018. *Id.*  Following the initial denial of Simpson's claim, the case went before Administrative Law Judge Timothy Wing ("the ALJ"), who concluded that Simpson, who was represented by counsel, was not disabled, and he denied her benefits on that basis on October 15, 2019. *Id.* at 13–34. Simpson requested review of the ALJ's decision before the Social Security Administration's Appeals Council, which denied her request on January 14, 2020. *Id.* at 1.

Simpson filed this action on February 15, 2020. *Doc. 1*.  The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 9-10*.  The parties consented to

---

[2]  The facts of the case are well known to the parties and will not be repeated here. Instead, we will recite only those facts that bear on Simpson's claims.

proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 12*.  The parties then filed briefs, *see docs. 13*, *16*, *17*, and this matter is ripe for decision.

## III.  Legal Standards.

### A.  Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

3

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Simpson is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any

other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920. Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision Denying Simpson's Claim.**

On October 15, 2019, the ALJ issued a decision denying Simpson benefits. *Admin. Tr.* at 13–34. The ALJ first concluded that Simpson met the insured-status requirements of the Social Security Act through December 31, 2023. *Id.* at 19.

At step one of the sequential-evaluation process, the ALJ found that Simpson had not engaged in substantial gainful activity since April 19, 2018, the alleged onset date. *Id.*

At step two of the sequential-evaluation process, the ALJ found that Simpson had the severe impairments of lumbar spine disorder, including degenerative disc disease, radiculopathy, and facet arthropathy; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder; bilateral carpal tunnel syndrome; obesity; and fibromyalgia. *Id.*

At step three of the sequential-evaluation process, the ALJ found that none of Simpson's impairments met or equaled the severity of the impairments listed under 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 19–22. In making this finding, the ALJ noted moderate limitations in understanding, remembering, and applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in managing oneself. *Id*. at 20–21. The ALJ also found that the "C criteria" for mental disabilities was not met. *Id.*

7

The ALJ fashioned an RFC, considering Simpson's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling, and climbing on ramps and stairs. She must avoid occupations that require climbing on ladders, ropes and scaffolds. The claimant must be afforded a sit/stand option during the workday for brief periods of a few minutes every 1/2 hour. The claimant is limited to occupations that require no more than occasional pushing/pulling with the upper extremities including the operation of hand levers. She is further limited to occupations that do not require frequent exposure to dangerous machinery and unprotected heights. The claimant is limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decision[s] and, in general, relatively few work place changes. She is limited to occupations requiring no more than occasional interaction with supervisors, co-workers and members of the general public.

*Id.* at 22.

In making this determination, the ALJ considered Simpson's testimony that she is unable to work due to physical and mental impairments; that she has some days she cannot get out of bed; that she is able to lift and carry only 5-10 pounds; and that after climbing a flight of stairs, she becomes short of breath. *Id*. at 23. The ALJ also considered Simpson's testimony that she began seeing a therapist in September or October of 2018, and that her mental illness manifests as insomnia, nightmares, and sweating. *Id*. Additionally, the ALJ considered that despite carpal

tunnel release, Simpson has pain in both wrists; that Simpson drives three or four times a week, but she cannot shop alone; that she becomes tired and drained from doing household chores; that she leaves her house only for medical appointments; that Simpson has been diagnosed with fibromyalgia; and that she has scoliosis that causes back pain. *Id*.  The ALJ further considered Simpson's assertions that she has burning in her feet; that she is unable to concentrate and fidgets; that she gets angry unexpectedly; that she feels fatigue from her medications; and that she only has one good day a week. *Id*.

The ALJ found that Simpson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

In addition to Simpson's testimony, the ALJ considered her treatment records and medical history during the relevant time period.  The ALJ noted that Simpson was involved in a motor vehicle accident in January 2018, that she was later seen in the emergency room for neck and back pain, but that CT scans were normal and no restrictions were noted. *Id*.  Additionally, the ALJ noted that an MRI performed on September 4, 2018, was normal and that Simpson was referred for physical and occupational therapy. *Id*.  The ALJ further noted that a subsequent

MRI performed on April 16, 2018, showed mild spondylosis at L3-4 and L4-5, mild stenosis at L3-4 and L4-5, and a small left foraminal disc protrusion at L4-5. *Id.* The ALJ also noted that an MRI of the cervical spine performed on May 15, 2018, showed no significant degenerative changes. *Id.*

The ALJ further considered that the medical record reflected that Simpson was diagnosed at St. Luke's University Health Network with neck strain, bilateral carpal tunnel syndrome, lumbar radiculopathy, and lumbar facet arthropathy. *Id.* The ALJ considered that an undisclosed staff member opined that Simpson could sit for 30 minutes at a time, up to 2 hours a day; could stand for 15 minutes at a time, up to 2 hours a day; could walk for 30 minutes at a time, up to 2 hours a day; could occasionally lift and carry 30 pounds; and could frequently lift and carry 10 pounds. *Id.* at 24. The ALJ found the opinion "partially persuasive." *Id.* at 25.

The ALJ noted that Decosy Hercules, MD ("Dr. Hercules"), an orthopedist, diagnosed Simpson with lumbar radiculopathy, lumbar paraspinal muscle spasms, cervical paraspinal muscle spasm, and weakness in both hips. *Id.* at 24. Additionally, the ALJ considered that Dr. Hercules opined that Simpson would need to change position every two hours, could stand for only 15 minutes and sit for only 30 minutes, would be able to work for only 2 hours a day, and would be able to lift and carry only 10 pounds. *Id.* The ALJ found Dr. Hercules' opinion "somewhat persuasive" noting that "the opinion is contradicted by the available

10

medical record, which includes objective findings on physical examination that would not be adverse enough to be work preclusive." *Id*. The ALJ also cited Exhibit 34F/1, noting "imaging of hands and feet essentially normal" in support of this finding. *Id*. at 25.

The ALJ considered that Simpson was seen by rheumatologist Emily Keeler, M.D. ("Dr. Keeler"), and that her physical examination was within normal limits, laboratory results were negative for autoimmune or inflammatory disease, and X-rays were essentially normal. *Id*. at 24. The ALJ considered Dr. Keeler's opinion that Simpson did not exhibit any indication of disability as a result of fibromyalgia and found that it was "partially persuasive." *Id*. at 25. He found it persuasive "insofar as it is consistent with a finding that [Simpson's] severe impairments are not fully disabling from full time work activity," but he found it "not persuasive insofar as it suggests no functional limitations are warranted from [Simpson's] severe impairments, to include fibromyalgia." *Id*.

The ALJ additionally considered the opinion of State agency consultant, Louis Tedesco, M.D. ("Dr. Tedesco"), who opined that Simpson could occasionally lift and carry up to 20 pounds; could frequently lift and carry up to 10 pounds; could sit for 6 hours a day; could stand and walk for a total of 6 hours a day; could frequently balance and stoop; could occasionally climb scaffolds, ladders, ropes, stairs, and ramps; could occasionally kneel, crouch, and crawl; and

had no limitation to pushing and pulling beyond the lifting restrictions noted. *Id*. at 25, 99–100.  The ALJ found that Dr. Tedesco's opinion was consistent with and supported by the record and found it to be "persuasive." *Id*. at 25.  But the ALJ concluded that "the documentary record as now constituted supports more limitations than originally determined." *Id*.

The ALJ further considered the evidence of record regarding Simpson's treatment for mental illness.  The ALJ considered that Simpson sought treatment at Preventative Measures for mental illness, noting that medical records from that source indicate that Simpson started treatment in November 2018, for major depressive disorder and post-traumatic stress disorder. *Id*. at 24.  The ALJ further noted that intake notes from Preventative Measures indicate that Simpson was well-groomed and cooperative, but she showed impaired remote memory, flat affect, and moderately impaired insight and judgment. *Id*.  And the ALJ noted that Simpson "sees a psychiatrist twice a month when needed and requires weekly counseling services." *Id*.

The ALJ also considered that Dr. Syed Ibrahim ("Dr. Ibrahim"), a psychiatrist at Preventative Measures, diagnosed Simpson with major depressive disorder and post-traumatic stress disorder. *Id*.  Dr. Ibrahim completed a medical source statement opining that Simpson had marked and extreme limitations in her functioning. *Id*.  The ALJ found that Dr. Ibrahim's opinions were "not persuasive,"

12

noting that he "used the old B criteria and his findings are not supported by the

overall objective medical evidence, including the claimant's limited mental health

treatment records." *Id*. at 25.[3]  He concluded that "available treatment reports do

not reflect findings that would equate to marked or extreme mental limitations." *Id*.

(citations to the record omitted).  The ALJ specifically noted that in a progress

report from February 21, 2019, Dr. Ibrahim noted that Simpson was "doing okay

---

[3]  The B criteria refers to a set of functional limitations applicable to many mental
impairments in the listings.  There are four B criteria, but those criteria have
changed over the years.  Prior to January 17, 2017, the four B criteria were:
"Activities of daily living; social functioning; concentration, persistence, or pace;
and episode of decompensation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1-Part A2,
§ 12.00 (version applicable from Sept. 19, 2016, to Jan. 16, 2017).  But on January
17, 2017, the four B criteria changed to: "Understand, remember, or apply
information; interact with others; concentrate, persist, or maintain pace; and adapt
or manage oneself." *Id*. (version applicable from Jan. 17, 2017, to Mar. 26, 2017).
Additionally, in evaluating mental impairments, the Commissioner uses a "special
technique" that, among other things, rates the degree of a claimant's functional
limitations in these same areas as the B criteria of the listings. *See* 20 C.F.R.
§§ 404.1520a(a), 416.920a(a).  The four areas listed in these regulations changed
on January 17, 2017. *Compare* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3)
(version effective June 13, 2011, to Jan. 16, 2017) (setting forth the four areas as:
"Activities of daily living; social functioning; concentration, persistence, or pace;
and episodes of decompensation"), *with* 20 C.F.R. §§ 404.1520a(c)(3),
416.920a(c)(3) (version effective Jan. 17, 2017, to Mar. 26, 2017) (setting forth the
four areas as: "Understand, remember, or apply information; interact with others;
concentrate, persist, or maintain pace, and adapt to manage oneself").  Dr. Ibrahim
opined as to Simpson's degree of limitation as to the four criteria in effect prior to
January 17, 2017. *See Admin. Tr.* at 975–977 (opining that Simpson had marked
restrictions in activities of daily living, extreme difficulties in maintaining social
functioning, extreme deficiencies in concentration and persistence, and extreme
limitations regarding episodes of deterioration or decompensation).

no active complaint sleeps okay mood depressed tired[,]" and that on March 28,
2019, Dr. Ibrahim wrote in Simpson's chart "doing okay feels little tired less
depressed and moody sleeping is okay." *Id*. The ALJ also considered that on
September 19, 2018, Dr. Hercules noted that Simpson had a normal mood and
affect and her behavior was normal, and that on April 30, 2019, Dr. Keeler noted
that Simpson had normal mood and affect. *Id*. at 26. The ALJ concluded that
"[t]he foregoing examples are inconsistent with the summary opinion by Dr.
Ibrahim of marked or extreme mental limitations during the relevant time-period of
his treatment of claimant." *Id*.

At step four of the sequential-evaluation process, the ALJ concluded that
Simpson was not capable of performing her past relevant work as a teacher's aide,
mail handler, home health aide, mail carrier, and nanny/child monitor. *Id.* at 26.

At step five of the sequential-evaluation process, the ALJ found that
Simpson could perform other jobs available in the national economy, and he noted
the representative positions of stuffer (toy/sports equipment), hand packer, and
electrical and electronics equipment assembler. *Id.* at 27. Accordingly, the ALJ
found that Simpson was not disabled pursuant to the Social Security Act. *Id.* at 28.

14

## V.  Discussion.

Simpson challenges the ALJ's decision based on the ALJ's evaluation of the medical opinions of record.  In her statement of errors, Simpson argues: (1) that the ALJ erred in rejecting the uncontroverted opinion of Dr. Ibrahim based upon lay interpretation of the evidence, thus substituting his own opinion for that of a medical one in violation of *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986); and (2) that the ALJ improperly rejected the opinion of the treating physician, Dr. Hercules, regarding standing, walking, and sitting limitations. *Doc. 13* at 7.

Because Simpson's claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence.  The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims, like Simpson's, filed on or after March 27, 2017, on the other hand.  Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021).  Under the old regulations, "ALJs were

required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

16

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). And as to consistency, those regulations

17

provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id*.  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

### A.  The ALJ properly evaluated the opinion of Dr. Hercules.

Dr. Hercules assessed that Simpson would be unable to ambulate effectively, could stand for no more than 15 minutes at one time and sit for no more than 30 minutes at one time. *Admin. Tr.* at 965.  In his Decision, the ALJ found Dr. Hercules' opinion "somewhat persuasive." *Id.* at 25.  In doing so, the ALJ explained:

> Dr. Hercules opined that the claimant would be limited to less than a full range of sedentary work but would only be able to work for 2 hours in an 8-hour day.  His finding that the

claimant is limited to a range of sedentary work is consistent with and supported by the overall objective medical evidence of record; however, his finding that the claimant could not work a full 8 hour day is not well supported.  For example, the check box type form has no information listed in the comments section as to the substantive basis for the various conclusions, particularly as to a two-hour work limit.  The opinion is also contradicted by the available medical record, which includes objective findings on physical examination that would not be adverse enough to be work preclusive (Exhibit 34F/1 (noting imaging of hands and feet essentially normal)).

*Id*.

Simpson argues on appeal that the ALJ's evaluation of her physical limitations is not supported by substantial evidence because: (1) the ALJ rejected portions of Dr. Hercules' opinion related to sitting, standing, and walking based on the ALJ's lay interpretation of the evidence; and, in the alternative, (2) the ALJ's RFC is not supported by substantial evidence because he did not rely on any of the four medical opinions of record when assessing her physical limitations. *Id*.

In response, the Commissioner argues that: (1) the caselaw Simpson cited in support of her argument is not applicable because the regulations have changed; (2) even if it is applicable, the Third Circuit's holding in *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986), does not support remand in this case; and (3) the ALJ's conclusion that Simpson can do sedentary work was not based on a lay interpretation of raw medical data.

We are not persuaded by Simpson's argument that the ALJ's evaluation of Dr. Hercules' opinion was inconsistent with the applicable regulations or with the Third Circuit's holding in *Doak*.  In *Doak*, the claimant alleged that he was disabled because of back problems, emphysema, chest pains, and feet trouble. 790 F.2d at 27.  The ALJ found that, despite his impairments, the claimant could engage in light work. *Id.*  The record in *Doak* included "claimant's testimony, three medical reports . . ., and a vocational expert's testimony." *Id.* at 28.  The Third Circuit found that the ALJ's conclusion that the claimant could do light work was not supported by substantial evidence:

> One physician believes Doak is totally disabled, another said he could do sedentary work, and a third made no conclusion about ability to work but stated that the claimant "was only able to exercise to a total of 4 METs of activity reaching a heart rate of 133 at which time he was extremely short of breath and [it] was indeed noticed that the wheezing was much worse." Tr. at 89. No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence.

*Id.* at 29.

Here, unlike in *Doak*, there is an opinion in the record that supports the ALJ's RFC regarding Simpson's physical limitations.  That opinion—issued by State agency medical consultant Dr. Tedesco—assessed that Simpson could stand and/or walk for six hours per workday and sit for six hours per workday. *Admin. Tr.* at 99.  Dr. Tedesco's opinion suggests that Simpson can do what the ALJ

assessed she could do.  Because there is evidence suggesting that Simpson can sit, stand, and walk consistent with the RFC assessment, it does not appear that the ALJ's rejection of Dr. Hercules' findings as to sitting, standing, and walking is based on the ALJ's lay opinion.

We similarly disagree with Simpson's assertion that the ALJ acted improperly by finding Dr. Hercules' opinion only "somewhat" persuasive.  In evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.  "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo*, 383 U.S. at 620.  Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Here, the ALJ cited the opinions in the record concerning Simpson's physical impairments.  He considered Dr. Hercules' opinion and found it somewhat persuasive, reasoning that it was rendered on a check-box form and that it gave no additional information for the basis of Dr. Hercules' conclusions; that the portion of the opinion that Simpson could not work a full day was not

21

supported by the record; and that there were no objective physical findings that supported a finding that Simpson was precluded from work. *Admin. Tr.* at 25. Additionally, the ALJ found that the portion of Dr. Hercules' opinion that Simpson could perform sedentary work was consistent with the record and consistent with the other opinions. *Id.*

The ALJ's consideration of Dr. Hercules' opinion meets the standard laid out in the regulations insofar as the ALJ articulated why he found the opinion unpersuasive and specifically addressed supportability and consistency.  Moreover, Simpson's argument fails to consider that there are conflicting opinions of record. Under those circumstances, we cannot conclude that the ALJ erred in his consideration of Dr. Hercules' opinion and of Simpson's physical impairments.

### B.  The ALJ erred in rejecting the opinion of Dr. Ibrahim and in rendering findings regarding Simpson's mental limitations that are not supported by substantial evidence.

Simpson also challenges the ALJ's rejection of Dr. Ibrahim's opinion.  The ALJ found Dr. Ibrahim's opinion that Simpson had marked and extreme limitations in functioning "not persuasive." *Admin. Tr.* at 25.  The ALJ noted that Dr. Ibrahim used the old B criteria. *See supra* note 4.  But there is overlap in some of the old B criteria and the new B criteria, and the ALJ did not attempt to parse that out.  Rather, the thrust of the ALJ's reasoning for finding that Dr. Ibrahim's opinion was not persuasive was that it conflicted with other medical evidence in

the record.  In this regard, the ALJ cited two progress notes from Dr. Ibrahim, and two notes from Simpson's medical doctors (one from Dr. Hercules and one from Dr. Keeler).  The ALJ concluded that those notes "are inconsistent with the summary opinion by Dr. Ibrahim of marked or extreme mental limitations during the relevant time-period of his treatment of claimant." *Admin. Tr.* at 26.

Simpson argues that the ALJ committed error by rejecting the only medical opinion in the record regarding her mental limitations. *Doc. 13* at 7–11.  She asserts that because Dr. Ibrahim's opinion was the only one in the record regarding her mental impairments, there was no medical opinion that supported the ALJ's findings and, thus, his rejection of Dr. Ibrahim's opinions could only be based upon his own lay interpretation of the record. *Id.*

In response, the Commissioner emphasizes that the standard of review is deferential to the ALJ. *Doc. 16* at 5.  And the Commissioner argues that Simpson's challenge is a veiled attempt to challenge the ALJ's factual findings. *Id.* at 8.  The Commissioner also argues that new regulations govern in this case and that those regulations supplant case law cited by Simpson. *Id.*  Finally, the Commissioner argues that Simpson errs in arguing that the ruling of *Doak v. Heckler*, creates a categorical rule. *Id.*  The Commissioner, therefore, submits that the ALJ's decision should be affirmed. *Id.* at 34.

In prior cases decided under the old regulations, we have accepted the type of arguments raised by Simpson and rejected the Commissioner's responses.  For example, in a recent case, we explained:

> It is well established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). . . . [W]hen weighing competing medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' " *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Mason*, 994 F.2d at 1066).  It is the duty of the ALJ to explain the rationale for the weight afforded to each medical opinion, as this allows for meaningful judicial review. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("The ALJ must consider all the evidence and give some reason for discounting the evidence that [the ALJ] rejects.") (quoting *Mason*, 994 F.2d at 1066).
>
> While the court recognizes that the RFC is an administrative finding, rather than a medical finding, "[t]here is an undeniable medical aspect to an RFC determination." *Barnett v. Berryhill*, No. 3:18-CV-637, 2018 WL 7550259, at *4 (M.D. Pa. Dec. 10, 2018).  In pertinent part, the RFC entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. *Id.*; *Nofsker v. Saul*, 3:20-CV-00193, 2021 WL 103661, at *9-10 (M.D. Pa. Jan. 12, 2021).  Therefore, "rarely can a decision be made regarding [a] claimant's RFC without an assessment from a physician regarding [the] functional abilities of [a] claimant." *See Donat v. Berryhill*, No. 17-5096, 2018 WL 3186953, at *4 (E.D. Pa. Jun. 28, 2018); *see also Gormont v. Astrue*, No. 11-2145, 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013); *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence").  Further, while "an ALJ is entitled to resolve conflicts in the evidence and

> determines the ultimate question of disability, as a lay person,
> the ALJ is not permitted to interpret raw medical data when
> evaluating a claimant's functional capacity." *See Donat*, 2018
> WL 3186953, at *4; *see also Doak*, 790 F.2d at 29; 20 C.F.R. §
> 404.1545.

*Kramer v. Saul*, No. 1:19-CV-01563, 2021 WL 1017252, at *7 (M.D. Pa. Mar. 17, 2021).  And we have stressed: "'Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor' because 'lay intuitions about medical phenomena are often wrong.'" *Id.* at *8 (quoting *Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *16 (M.D. Pa. May 11, 2015) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

Here, we agree with Simpson that after the ALJ discounted the opinion of Dr. Ibrahim, there was no other opinion evidence in the record as to limitations caused by her mental-health issues, and the ALJ used his own lay reinterpretation of the medical records to come to a conclusion in opposition to that of Dr. Ibrahim. Under our prior caselaw, this was error and leaves us to conclude that the ALJ's RFC as to Simpson's mental ability is not supported by substantial evidence.

The question that remains is whether the new regulations warrant a different result.  Our answer: No.

The new regulations make some fundamental changes—e.g., the Commissioner no longer assigns weight to opinion evidence (but rather analyzes

25

whether the opinion evidence is persuasive), and the Commissioner will no longer

assign controlling weight to the opinion of a treating physician.  But even under the

old regulations, the Commissioner was not always required to give controlling

weight to a treating physician's opinion.  Rather, the Commissioner was only

required to give controlling weight to such an opinion if it was well-supported and

consistent with other evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2) ("If we find that a treating source's medical opinion on the issue(s)

of the nature and severity of [the claimant's] impairment(s) is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the claimant's] case record, we

will give it controlling weight.").  Those same two factors—supportability and

consistency—are now the most important factors under the new regulations in

determining the persuasiveness of a medical opinion. *See* 20 C.F.R. §§

404.150c(b)(2), 416.920c(b)(2) ("The factors of supportability . . . and consistency

. . . are the most important factors we consider when we determine how persuasive

we find a medical source's medical opinion . . to be.").  And in addition to

supportability and consistency, the new regulations contain a list of other factors to

consider that is remarkably similar to the list of factors to be considered under the

old regulations. *Compare* 20 C.F.R. §§ 404.150c(c), 416.920c(c) (new regulations)

(in addition to supportability and consistency, listing the following factors to be

26

considered: relationship with the claimant (which consists of consideration of the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization, and other factors, *with* 20 C.F.R. §§ 404.1527(c), 416.927(c) (old regulations) (listing the following factors to be considered when controlling weight is not given to an opinion: length of the treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors).

In sum, although the nomenclature has changed from assigning weight (sometimes controlling weight) to medical opinions under the old regulations to determining persuasiveness of medical opinions under the new regulations, the factors that the Commissioner considers when addressing opinion evidence have not materially changed.  And the new "regulations do not alter the longstanding proposition that '[b]ecause they are not treating medical professionals, ALJs cannot make medical conclusions in lieu of a physician.'" *Kenyon v. Saul*, No. 1:20-CV-1372, 2021 WL 2015067, at *9 (M.D. Pa. May 19, 2021) (quoting *Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 779 (W.D. Pa. 2013)).  Thus, the new regulations do not cause us to change our conclusion that the ALJ erred by rejecting Dr. Ibrahim's opinion based on the ALJ's own lay reinterpretation of the

medical evidence and given that there was no other medical opinion evidence in the record regarding Simpson's limitations caused by her mental impairments, the ALJ's RFC as to Simpson's mental ability is not supported by substantial evidence.

We note that in the RFC, the ALJ did limit Simpson "to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decision[s] and, in general, relatively few work place changes[,]" as well as "occupations requiring no more than occasional interaction with supervisors, co-workers and members of the general public." *Admin. Tr.* at 22. But we do not know whether the ALJ would have included additional restrictions had he not rejected Dr. Ibrahim's opinion that Simpson had marked and extreme limits in several areas. Thus, we cannot say that they ALJ's error was harmless.

In conclusion, because the ALJ improperly rejected the only opinion of record as to Simpson's psychiatric limitations, we will vacate the decision and remand the case for further proceedings.

## VI.  Conclusion.

For the foregoing reasons, the decision of the Commissioner will be vacated, and the case will be remanded to the Commissioner for further consideration.  An appropriate order follows.

*__S/Susan E. Schwab__*
Susan E. Schwab
United States Magistrate Judge